UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MALIA LIVOLSI<br>　　Plaintiff, | §<br>§<br>§ | |
| V. | §<br>§ | CASE NO. 1:24-cv-127 |
| UNIVERSITY OF TEXAS AT AUSTIN,<br>　　Defendant. | §<br>§<br>§<br>§ | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Malia LiVolsi, ("Ms. LiVolsi" or "Plaintiff") files this Original Complaint against The University of Texas at Austin, ("UT Austin" or "Defendant") and shows the Court and Jury as follows:

**INTRODUCTION**

1. This is an employment discrimination and retaliation case. Defendant UT Austin hired Ms. LiVolsi as an Academic Advisor for the Butler School of Music. Ms. LiVolsi reported to Chris Montes, former Director of Student Affairs-College of Fine Arts, John Turci-Escobar, Assistant Dean for Undergraduate Studies-College of Fine Arts, and ultimately, Dr. Ramon Rivera-Servera, Dean-College of Fine Arts, as the highest supervisor in her chain-of-command. From the very beginning, Ms. LiVolsi was excited to start her position and was eager to grow with UT Austin. As a dedicated and loyal employee, Ms. LiVolsi soared in her role of providing five-star care for students, contributed to UT Austin's growth, and maintained efficient student relations. Ms. LiVolsi did not have any formal write-ups or Performance Improvement Plans ("PIP's"), and she envisioned herself with UT Austin for many years to come. Ms. LiVolsi never imagined her employment would be cut short due to ongoing sexual harassment and retaliation, while the perpetrator remains employed as the Assistant Dean for Undergraduate Studies to this day.

1

## JURISDICTION AND VENUE

2. This action involves a federal question under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et sec., as amended, including gender discrimination, sexual harassment, and retaliation.

3. Venue is proper within the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391 because the events establishing the basis for Plaintiff's cause of action occurred within Travis County, Texas in the Western District of Texas, Austin Division.

## JURY DEMAND

4. Plaintiff requests a jury trial.

## PARTIES

5. Plaintiff Malia LiVolsi is an individual who at all relevant times has been employed by Defendant University of Texas at Austin and may be served through her counsel of record in this case.

6. Defendant University of Texas at Austin is a governmental entity established under the laws of the state of Texas and is located in Austin, Texas. Defendant may be served with process through its President, Jay Hartzell, via Associate VP for Legal Affairs, Amanda Cochran-McCall, at 2304 Whitis Avenue, FAC 438, Austin, Texas 78713.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELINESS OF SUIT

7. Plaintiff filed a Charge of Discrimination within 180 days of Defendant's illegal actions concerning her employment. The Charge was dual filed with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division ("TWC"). On November 27, 2023, Plaintiff received a "Notice of Right to Sue" letter from the EEOC. This suit was filed within 90 days of Plaintiff's receipt of that notice and within two years

from the date that Plaintiff filed a charge of discrimination.

## FACTS

8.  UT Austin hired Plaintiff in March 2020 as an Academic Advisor for The Butler School of Music. In August 2021, she was promoted to Senior Academic Advisor. Beginning in late fall of 2021 through early spring of 2022, Ms. LiVolsi started experiencing discrimination, harassment, and emotional distress. Dean Turci-Escobar began a pattern of making comments to Ms. LiVolsi and other women on Zoom meetings like: "Oh all three women are here. I'm scared!" Dean Turci-Escobar also spoke to Ms. LiVolsi about how his wife made things difficult when it came to matters related to the female staff. This was Ms. LiVolsi's first red flag that gender bias was present at UT Austin in the course and scope of her employment. However, due to Dean Turci-Escobar's position at UT Austin, Ms. LiVolsi decided to keep these unwelcome comments private.

9.  Soon after, at a Saturday event with prospective students and parents, Dean Turci-Escobar approached Ms. LiVolsi and commented on her black dress by saying: "Why so goth today?" This statement was made while repeatedly staring Ms. LiVolsi up and down in a lewd manner. Additionally, Dean Turci-Escobar said to the attendees present: "Malia has a fancy Lexus. She's fancy in case you didn't know," which meant that he either looked for Ms. LiVolsi's vehicle on his own or saw Ms. LiVolsi driving. Dean Turci-Escobar also told Ms. LiVolsi: "You know you do pretty great work and have moved up quickly here, but if you want to keep moving up you need a Masters." Ms. LiVolsi learned from others that this was not the case, and it only highlighted Dean Turci-Escobar's attempt to establish control over Ms. LiVolsi. Due to how close Dean Turci-Escobar was in proximity to Ms. LiVolsi, she became extremely fearful. Of critical importance, strict liability attached to UT Austin at this time. This was Ms. LiVolsi's second major red flag that UT and Dean Turci-Escobar allowed gender bias, sexual harassment, and threatening actions to transpire in the course and scope of her employment.

10. On or about April 12, 2022, Ms. LiVolsi specifically told Dean Turci-Escobar that

because it was her birthday, she would be spending time with her family to celebrate and would be unavailable. Nonetheless, Dean Turci-Escobar text messaged Ms. LiVolsi nonstop during the morning of her birthday about things unrelated to her job. Ms. LiVolsi asked him multiple times to contact the Music Advisor instead of Ms. LiVolsi, but he continued to ignore these requests and responded to Ms. LiVolsi "But I prefer talking to you…" Ms. LiVolsi could feel her body go into panic, and she did not reply further to Dean Turci-Escobar. Instead, Ms. LiVolsi reported this to Mr. Montes, and he told Dean Turci-Escobar to leave Ms. LiVolsi alone. Upon information and belief, other former UT Austin female employees experienced these same behaviors from Dean Turci-Escobar, specifically being hit on with bizarre comments and behaviors. This demonstrated that UT Austin and Dean Turci-Escobar engaged in a pattern of gender bias, sexual harassment, and assaults during the course and scope of Plaintiff's employment, as well as to other female employees.

11.    Soon after this, Ms. LiVolsi went to Kevin Crook, Director of Human Resources-College of Fine Arts, and tried to report Dean Turci-Escobar's unwelcome sexual harassment, but Ms. LiVolsi told to contact the Title IX Office at UT Austin. Ms. LiVolsi did so, and the Title IX Office informed her that they only assisted with student needs or concerns. Ms. LiVolsi provided this information to Mr. Crook, but he did nothing to follow-up or conduct any form of an internal investigation. Instead, upon information and belief, Mr. Montes spoke up for Ms. LiVolsi to Mr. Crook. It was conveyed that Dr. Rivera-Servera, Dean of the College of Fine Arts, allegedly had a "stem talk" with Dean Turci-Escobar, and Ms. LiVolsi was told that there should be no more issues. This did not turn out to be the case.

12.    In or about late April 2022, Ms. LiVolsi began getting treatment by her Psychiatrist, Susie Seay, for the trauma and anxiety arising from the unwelcome sexual harassment by Dean Turci-Escobar. Going forward, Ms. LiVolsi attended these treatment visits regularly, as well as for medication management.

13.    In approximately summer of 2022, Ms. LiVolsi  underwent a major surgery and

4

began working remotely. Although working from home, Ms. LiVolsi still worked full-time and received all fives on her performance scores in all categories.

14.     While still recovering from surgery, Ms. LiVolsi returned to campus around September 2022. In Ms. LiVolsi's first encounter with Dean Turci-Escobar upon her return, he approached Ms. LiVolsi while they were alone in the office suite. Dean Turci-Escobar started to inquire about her surgery and which reproductive organs were worked on. Ms. LiVolsi indicated that was a conversation she did not want to have, but he continued nonetheless. Dean Turci-Escobar then began discussing his weight loss, and Ms. LiVolsi continued to ignore him. However, Dean Turci-Escobar then said: "I got a pull up bar on my door. You should come hang on it sometime." Ms. LiVolsi replied: "Umm…what? I don't do pullups." He responded: "You don't have to. Just let your body hang there. It's great for your body and it feels good!" Ms. LiVolsi remained polite and professional, and he eventually left. Dean Turci-Escobar's unwelcome comments and close proximity to Ms. LiVolsi made her feel extremely uncomfortable and nervous.

15.     A short time later, Ms. LiVolsi told Mr. Montes about what happened. Based on his direction and approval, she was allowed to work remotely as long as she reported to campus for important events and meetings. A few days later, two students reported complaints against a professor in the music school. Of note, Ms. LiVolsi had raised this same issue with Dean Turci-Escobar approximately one year earlier, and his response was as follows: "Tough love." Ms. LiVolsi replied saying that their job was "to educate, not perpetuate." However, Dean Turci-Escobar brushed Ms. LiVolsi off and no further steps were taken. Ms. LiVolsi reported the student complaints to Mr. Montes who was alarmed but was in the process of leaving his position with UT Austin.

16.     After speaking with Ms. Whited, Ms. LiVolsi contacted the Title IX Office as a mandatory reporter, both for the students and for herself. The Title IX Office advised Ms. LiVolsi to prepare written reports regarding her own experience and the students' experience. They said to

5

send it in as a non-formal complaint so that it went nowhere without Ms. LiVolsi's permission. Ms. LiVolsi did not hear from the office until several weeks later when they requested an intake interview without any guarantee of confidentiality or protection from retaliation. So, Ms. LiVolsi closed the case to protect her confidentiality due to fear of retaliation in the toxic work environment that had been created in The Butler School of Music. Following these events, it became evident to Ms. LiVolsi that UT Austin did not protect its employees when they complained. Even upon reports to an office designed to assist with sexual harassment and discrimination reports, UT Austin failed in its duty to "remedy the situation."

17.     On or about November 9, 2022, Ms. LiVolsi received an un-redacted closure memorandum containing her complaint. The document was sent to Dean Rivera-Servera, who managed Dean Turci-Escobar and who was overseeing the interview process for Mr. Montes' soon-to-be vacant position. Ms. LiVolsi wanted to apply for this position, but she was afraid of continued retaliation and backlash. She reached out to Dean Rivera-Servera but did not hear back.

18.     On or about the end of November 2022, Mr. Montes announced he was leaving his position by early December of 2022. Mr. Montes personally recommended Ms. LiVolsi to replace him as Director of Student Affairs. Ms. LiVolsi cared a lot about her team, wanted the position, and worked extremely hard to gain the necessary knowledge and understanding of Mr. Montes' role.

19.     However, immediately after Mr. Montes' last day, Dean Turci-Escobar began to retaliate against Ms. LiVolsi. He mandated that Ms. LiVolsi be "softer" with students. Dean Turci-Escobar also directed Ms. LiVolsi to take on the entire brunt of the office work from another employee, all in an effort by Dean Turci-Escobar to control and limit the advancement of Ms. LiVolsi.

20.     On or about the middle of December of 2022, Ms. LiVolsi went to Mr. Crook and asked if anyone in Human Resources, or others, could educate Dean Turci-Escobar on how to be a more suitable leader because he was making Ms. LiVolsi's and the other female employees' lives

miserable. Mr. Crook stated that they could not guarantee anything and offered no resolution. Mr. Crook told Ms. LiVolsi that she should probably leave the office due to the "continued implosion." When Ms. LiVolsi asked Mr. Crook if she should apply for Mr. Montes' former role that was still open, Mr. Crook said that she was qualified. However, Mr. Crook added that it would be a "treacherous" process. Following this conversation, Ms. LiVolsi experienced depressive periods and suicidal ideation, and her health diminished in every way. Ms. LiVolsi's career and everything she ever worked for was falling to pieces.

21. On or about January of 2023, Dean Turci-Escobar's retaliatory behavior continued. He was incredibly cold to and demanding of Ms. LiVolsi. Dean Turci-Escobar mocked Ms. LiVolsi and waved his hands in the air, whereby he told Ms. LiVolsi: "Go through ADA. I'm not touching it until I hear from them. Otherwise, you need to be here 8-5 three days a week." Ms. LiVolsi reached her breaking point and decided to apply for FMLA to take time for her mental health and well-being as a result of Dean Turci-Escobar's actions. From approximately February 14, 2023 through May 8, 2023, Ms. LiVolsi took her approved FMLA leave.

22. On or about May 8, 2023, Ms. LiVolsi returned to work. Dean Turci-Escobar was relentless in continuing to target Ms. LiVolsi. First, Dean Turci-Escobar ignored Ms. Livolsi, which resulted in Ms. LiVolsi having a major panic attack. Ms. LiVolsi sent correspondence to Ms. Seay notifying her of this update and asked for medication. Then, Dean Turci-Escobar sent an email with an extraordinarily long list of additional tasks for her to perform. Given this continued pattern of behavior and treatment, Ms. LiVolsi had no other option than to provide notice of her constructive discharge as a similar person in her position would have no other option than to involuntarily resign. Ms. LiVolsi's emotional, phycological, and physical health took priority over working in such unsafe and toxic conditions. Ms. LiVolsi provided this notice to UT Austin in writing.

## CAUSES OF ACTION

## COUNT I:  TITLE VII - GENDER DISCIMINATION, SEXUAL HARASSMENT & RETALIATION

23. Ms. LiVolsi reasserts and incorporates the allegations contained in this complaint as if fully stated herein.  Each individual cause of action is pled in addition or in the alternative to the other claims in this complaint.

24. Ms. LiVolsi was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq., as amended ("Title VII"). In addition, Ms. LiVolsi is a member of a protected class on the basis of gender and sex.

25. UT Austin is an employer within the meaning of Title VII. As an employee of UT Austin, Ms. LiVolsi, in all respects, was performing her job in a manner that was consistent with UT Austin's legitimate expectations.

26. UT Austin violated federal law, including Title VII, by discriminating against Ms. LiVolsi because of her sex (female).  UT Austin discriminated against Ms. LiVolsi, as described above, through disparate treatment due to her gender, harassing her, and subjecting her to a hostile work environment.  As set forth herein, the sexual harassment to which Ms. LiVolsi was subjected to was severe and pervasive.

27. UT Austin also retaliated against Ms. LiVolsi, as described above, for reporting the harassing, discriminatory, and disparate treatment of workers and students, as well as the hostile work environment to her superiors and the appropriate reporting arm of the UT system.

28. UT Austin's actions were taken with a willful and wanton disregard of Ms. LiVolsi's rights under Title VII.

29. As a direct and proximate result of UT Austin's unlawful employment practices and in disregard of Ms. LiVolsi's rights and sensibilities, Ms. LiVolsi has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## COUNT II:  TCHRA - GENDER DISCIMINATION, SEXUAL HARASSMENT & RETALIATION

30. Ms. LiVolsi reasserts and incorporates the allegations contained in this complaint as if fully stated herein.  Each individual cause of action is pled in addition or in the alternative to the other claims in this complaint.

31. Ms. LiVolsi was an employee within the meaning of the Texas Commission on Human Rights Act ("TCHRA"), chapter 21, Texas Labor Code. In addition, Ms. LiVolsi is a member of a protected class on the basis of gender and sex.

32. UT Austin is an employer within the meaning of the TCHRA. As an employee of UT Austin, Ms. LiVolsi, in all respects, was performing her job in a manner that was consistent with UT Austin's legitimate expectations.

33. UT Austin violated Texas law, including the TCHRA, by discriminating against Ms. LiVolsi because of her sex (female).  UT Austin discriminated against Ms. LiVolsi, as described above, through disparate treatment due to her gender, harassing her, and subjecting her to a hostile work environment.   As set forth herein, the sexual harassment to which Ms. LiVolsi was subjected to was severe and pervasive.

34. UT Austin also retaliated against Ms. LiVolsi, as described above, for reporting the harassing, discriminatory, and disparate treatment of workers and students as well as the hostile work environment to her superiors and the appropriate reporting arm of the UT system.

35. UT Austin's actions were taken with a willful and wanton disregard of Ms. LiVolsi's rights under the TCHRA.

36. As a direct and proximate result of UT Austin's unlawful employment practices and in disregard of Ms. LiVolsi's rights and sensibilities, Ms. LiVolsi has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

9

## COUNT III: FMLA RETALIATION

37. Ms. LiVolsi reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each individual cause of action is pled in addition or in the alternative to the other claims in this complaint.

38. Ms. LiVolsi was a covered employee within the meaning of Family and Medical Leave Act of 1993, 29 U.S.C. § 2611 et seq., as amended Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq., as amended ("FMLA"). UT Austin is a public agency that is subject to the requirements of the FMLA.

39. As described throughout this complaint, UT Austin violated the FMLA by discriminating and retaliating against Ms. LiVolsi because she exercised her rights under the FMLA. UT Austin harassed, interfered with, and restrained Ms. LiVolsi with respect to her FMLA rights, and ultimately discharged her for exercising these rights.

40. UT Austin's actions were taken with a willful and wanton disregard of Ms. LiVolsi's rights under the FMLA.

41. As a direct and proximate result of UT Austin's unlawful employment practices and in disregard of Ms. LiVolsi's rights and sensibilities, Ms. LiVolsi has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## DAMAGES

42. As a result of UT Austin's violations of law, including Title VII, FMLA, and the TCHRA, Ms. LiVolsi has suffered actual damages in the form of lost compensation, wages, benefits and other economic damages (past and future). Ms. LiVolsi has also suffered compensatory damages, including loss of standing in the community, damage to reputation, loss of career advancement, emotional pain and suffering, loss of enjoyment of life, mental anguish and other losses. As a result of UT Austin's violations of law, Ms. LiVolsi requests the Court to enter an order

for all actual, economic, compensatory, liquidated, and other damages or remedies, equitable, statutory or otherwise, and attorney fees, expert fees, expenses and costs, that Ms. LiVolsi proves are appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Ms. LiVolsi respectfully prays that UT Austin be cited and called to answer, and that on final judgment Ms. LiVolsi be granted relief under Texas and Federal law, including:

a) Damages for lost wages and benefits, past and future;

b) Compensatory damages;

c) Liquidated damages;

d) Damages for damage to reputation, emotional distress and mental anguish, past and future;

e) Equitable remedies, including reinstatement and promotion;

f) Attorney fees, expert fees, expenses and costs of suit;

g) Interest allowed by law;

h) General damages;

i) Special damages;

k) Such other and further relief that is proven to be appropriate.

Dated: February 2, 2024

                                                Respectfully submitted,

                                                *s/C. Ashley Callahan*
                                                C. Ashley Callahan
                                                State Bar No. 24027545
                                                Anne E. Grigg
                                                State Bar No. 24032252
                                                LAW OFFICES OF C. ASHLEY CALLAHAN, P.C.
                                                603 W. 17th Street
                                                Austin, TX 78701
                                                Telephone:  512.817.3977
                                                Telecopier:  512.287.3127
                                                acallahan@callahanlawoffices.com
                                                anne@callahanlawoffices.com

                                                **ATTORNEYS FOR PLAINTIFF**