UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MALIA LIVOLSI<br>    Plaintiff, | §<br>§<br>§ | |
| | | CASE NO. 1:24-cv-00127-RP |
| V. | §<br>§ | |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN,<br>    Defendant. | §<br>§ | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Plaintiff Malia LiVolsi, ("Ms. LiVolsi" or "Plaintiff") hereby files her Response to Defendant University of Texas at Austin's ("UT" or "Defendant") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion" or "Defendant's Motion"), ECF No. 11 and respectfully offers the Court the following response.

**INTRODUCTION**

Plaintiff's live pleading has clearly stated claims for employment discrimination based on sex, sexual harassment, and a classic retaliation case. To the extent Defendant ever raised any legitimate concerns about the sufficiency of Plaintiff's pleadings, any such doubts were erased with the filing of Plaintiff's First Amended Original Complaint (hereafter, "FAC"). ECF No. 10. It appears Defendant simply re-filed the exact motion it filed in response to the Original Complaint with almost zero additions to address the substantive FAC modifications (other than deleting portions that no longer apply). Many of the alleged shortcomings raised in Defendant's Motion are directly and specifically addressed in the FAC and should be easily dispensed with by the Court.

In March 2020, Defendant UT Austin hired Ms. LiVolsi as an Academic Advisor for the Butler School of Music. Ms. LiVolsi directly reported to John Turci-Escobar, Assistant Dean for

1

Undergraduate Studies-College of Fine Arts.[1] Shortly after being promoted to Senior Academic Advisor in August 2021, Ms. LiVolsi began experiencing discrimination, harassment, and emotional distress from Dean Turci-Escobar. Among other actions and as described in the FAC, Dean Turci-Escobar engaged in an ongoing and continuing pattern of making sexually charged innuendos, intimidating Ms. LiVolsi into silence and compliance, fostering a culture of fear and humiliation, assigning demeaning tasks beneath her skill-level, treating her with disrespect, and exhibiting classic abusive behavior. Dean Turci-Escobar's actions were unwanted and unwarranted. They made Ms. LiVolsi feel extremely uncomfortable, anxious, and afraid. They caused well-founded fear for her health, well-being, and her job. Despite her requests to address his behavior, UT did nothing, compelling Ms. LiVolsi to stand up for herself. Ms. LiVolsi was forced to leave a job she loved and had earned because Defendant ignored Dean Turci-Escobar's abhorrent and discriminatory behavior. Each of these issues and more are addressed individually and in further detail below. The FAC in this matter is more than sufficient to plausibly state causes of action and put Defendant on notice of Plaintiff's claims; therefore, Defendant's Motion should be denied.

## ARGUMENTS AND AUTHORITIES

### I.  Plaintiff Has Met the Requirements of Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

2

[1] All factual allegations in this Response are taken directly from Plaintiff's First Amended Complaint (ECF No. 10), either with or without citation to same.

alleged." *Ashcroft*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). The pleading threshold is determined at the beginning of a case and serves the practical purpose of preventing a plaintiff with "'a largely groundless claim'" from "'tak[ing] up the time of a number of other people...'" *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *Sonnier v. State Farm Mut. Auto. Ins. Co*., 509 F.3d 673, 675 (5th Cir. 2007). A Plaintiff is not required to prove her case at the pleading stage, and the Court should not examine the merits or weigh evidence when considering the motion. *Twombly*, 550 U.S. at 556. This rule applies even when an allegation "strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*.

A district court cannot dismiss a complaint, or any part of it, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). The Court does not evaluate the Plaintiff's likelihood of success; instead, it only determines whether the Plaintiff has stated a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp*., 355 F.3d 370, 376 (5th Cir. 2004). Moreover, Texas federal courts have held that a "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Tristan v. Socorro Independent School Dist*., 902 F. Supp. 2d 870, 873 (W.D. Tex. 2012). Significantly, Defendant has been on notice of the allegations of Plaintiff's claims and

the associated causes of action since at least May 18, 2023 when her EEOC claim was filed.

Plaintiff's FAC provides more than enough information to put Defendant on notice. The alleged claims are plausible and should be taken as true, the Court can and should reasonably infer Defendant could be liable for the misconduct alleged, and Plaintiff is entitled to the requested relief. Notably, Defendant spends the majority of its Motion arguing not about the plausibility of Plaintiff's claims (as is appropriate for Rule 12(b)(6) motion), but about the merits. *See* ECF No. 11. Defendant devotes a large amount of space and words to describing how Plaintiff has asserted no valid claims based on Defendant's interpretation of potential evidence and arguments, rather than by construing the allegations in the light most favorable to Plaintiff. It is telling that this simple concept requires such a tortured and lengthy explanation. Defendant's arguments are more appropriate, if at all, in a motion for summary judgment following discovery on the merits. The Motion should be denied, on its face, as an inappropriate attempt to achieve a dispositive outcome on a valid claim without allowing the Plaintiff discovery to which she is entitled.

### A. Plaintiff Followed All Appropriate Administrative Procedures and Timely Filed Suit

Plaintiff followed all appropriate administrative procedures in asserting her harassment, discrimination, and retaliation claims and has exhausted all administrative remedies. Plaintiff filed her Charge of Discrimination within 180 days of Defendant's illegal employment actions. The Charge was dual filed with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division ("TWC"). On November 27, 2023, Plaintiff received the EEOC "Notice of Right to Sue" letter. Plaintiff filed suit within 90 days of that date and within two years from the date she filed her charge; therefore, Plaintiff appropriately followed all administrative procedures, and all allegations in the FAC are timely and actionable.

Defendant spends considerable time and space setting forth the statute of limitations and standard for the "continuing violation doctrine." ECF No. 11, ¶¶ 4-6. Plaintiff does not take issue

with this standard.  The problem is that Defendant made no effort to update its Motion after Plaintiff filed her FAC.  In particular, paragraph 8 of the FAC alleges in great detail the ways in which the continuing violation doctrine applies to this case. ECF No. 10 at ¶ 8. Plaintiff did not simply make conclusory assertions. Instead, Plaintiff provided very specific examples from her experiences and concrete allegations for each element. *Id.* Defendant did not even attempt to argue Plaintiff's allegations are inadequate.  There is nothing for Defendant to say because Plaintiff has properly alleged all elements and provided more than sufficient detail to survive any Rule 12 motion.

Plaintiff experienced more than one single incident of harassment or discrimination, and the violations occurred at more than one time.  Beginning in the fall of 2021, Dean Turci-Escobar's comments and offensive actions directed towards his female employees, including Plaintiff, hinted at misogyny and antipathy toward women in the workforce.  At the time, Ms. LiVolsi thought the comments were odd and isolated and hoped that she misunderstood.  However, she now knows these were only the beginnings of Dean Turci-Esobar's discriminatory and harassing behavior.  The comments and actions continued and worsened over the next eighteen to twenty months.  The examples provided in Ms. LiVolsi's FAC are merely illustrative of the continuous pattern of discriminatory conduct and associated events that are all related and should not be interpreted as discrete isolated acts.  The discrimination based on sex, sexual harassment, and retaliation discussed in Plaintiff's pleading grew worse over time, and finally became beyond question at the end. Each event discussed in Plaintiff's FAC has greater meaning and significance now than they did when they originally occurred because the full story is now known.  In addition to Dean Turci-Escobar, her other supervisors - Chris Montes, former Director of Student Affairs-College of Fine Arts and Dr. Ramon Rivera-Servera, Dean-College of Fine Arts – were well-aware of what was happening.

Plaintiff has specifically alleged this case is more akin to a "hostile environment claim" that arises from the "cumulative effect of individual acts," some of which "may not be actionable on

5

[their] own." *See Sewell v. Monroe City Sch. Bd*., 974 F.3d 577, 583-584 (5th Cir. 2020) citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). In other words, "the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement." *See Sewell*, 974 F.3d at 584, citing *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll*., 850 F.3d 731, 737 (5th Cir. 2017). If "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117. Plaintiff has plausibly pled the continuous conduct that forms the basis of this lawsuit endured up until the date Plaintiff was constructively discharged.  It appears Defendant has all but conceded this point, but it must be addressed since it remained part of Defendant's Motion.

### B.  The Facts as Pled by Plaintiff Allege a Valid Claim for Sexual Harassment

Title VII also prohibits sexual harassment as a form of employment discrimination. *Wallace v. Performance Contractors, Incorporated*, 57 F.4th 209, 220 (5th Cir. 2023); *EEOC v. Boh Bros. Constr. Co., LLC*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc). Defendant cites the five factors necessary to establish a prima facie case for a hostile work environment: an employee must show that: "(1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action." *Wallace*, 57 F.4th at 220; *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022). However, when a supervisor is the harasser, the employee need not establish the fifth element. *Boh Bros*., 731 F.3d at 453.  Therefore, Plaintiff addresses the first four elements.

Defendant does not challenge Plaintiff's statements that she is part of a protected class. Instead, Defendant challenges that the incidents do not rise to the level of harassment and are not

based on her protected class.  Defendant also argues Plaintiff has not asserted a term, condition, or privilege that was affected by any of the actions alleged in Plaintiff's FAC. Contrary to Defendant's unsupported assertions, Plaintiff alleged each of these elements.  Defendant's conclusory statements in this regard involve an evaluation of the weight of the evidence, not the plausibility of Plaintiff's claims.  These are questions to be addressed following fact discovery and a motion for summary judgment, not in a motion to dismiss. *See Castro v. Bexar Cnty.,* Civil Action No. 5:23-CV-08-DAE, 2024 U.S. Dist LEXIS 87603 at 8-9 (W.D. Tex.May 14, 2024) (Court denied Defendant's motion to dismiss a retaliation claim stating Plaintiff had alleged plausible claims and the evidence and merits would be considered in summary judgment); *see also Douglas v. Wells Fargo Bank Tex. Bna*, Civil Action No. 4:19-CV-091, 2020 U.S. Dist LEXIS 256824 at 8-9 (E.D. Tex. March 11, 2020) (refusing to consider cases cited by defendant in motion to dismiss because they involved the application of summary-judgment standards to hostile work environment claims and do not inform the Court's analysis on if a hostile work environment claim may survive a Rule 12(b)(6) challenge).

1. **Dean Turci-Escobar's Behavior, Actions, and Comments, When Taken in Context, Created a Hostile Work Environment**

Dean Turci-Escobar's actions, animus, and discriminatory intent were based on Plaintiff's gender from the beginning.  This was not entirely clear originally, but there was no doubt in Plaintiff's mind as she continued to live the experience.  As in many cases of harassment, context and tone, as well as Dean Turci-Escobar's position of power as Ms. LiVolsi's supervisor, were critical features.  Defendant's Motion brushes off many of Plaintiff's allegations as non-harassing, non-threatening, and not having anything to do with the fact that Plaintiff is a female.  However, Defendant's incomplete and misleading characterizations of Plaintiff's allegations do not present the full picture.  Defendant conveniently leaves out that Plaintiff has clearly alleged additional details in her FAC that ***do*** show unwelcome harassing behavior and that ***do*** relate to the fact that

Plaintiff is a female.  All of these allegations ***must*** be accepted as true and viewed in the light most favorable to Plaintiff by the Court. *Dorsey,* 540 F.3d at 338 (5th Cir. 2008).

While the FAC should be reviewed in its entirety, Plaintiff will point out certain important examples here.  Defendant cites to Dean Turci-Escobar's comment to Plaintiff "Why so goth today?" as being an example of inadequate pleading of event that is not discriminatory based on sex.  ECF No. 10 at ¶11. What Defendant leaves out is that this statement was made while he was in close proximity to Plaintiff and was repeatedly staring Ms. LiVolsi up and down in a lewd manner and was made in the context of a sexualized series of comments about her appearance. Additionally, Dean Turci-Escobar also commented "Malia has a fancy Lexus. She's fancy in case you didn't know." *Id.*  In that specific context, Dean Turci-Escobar's comments revealed he was engaged in overly personal and intrusive investigation of Plaintiff's private affairs.  In another example, Dean Turci-Escobar told Ms. LiVolsi: "You know you do pretty great work and have moved up quickly here, but if you want to keep moving up you need a Masters." *Id.* This statement turned out to be false and is another example of Dean Turci-Escobar's attempt to establish control over Ms. LiVolsi by demeaning her and abusing his alleged superior access to information.

Dean Turci-Escobar had now made sexualized remarks, commented on her appearance in a sexual manner, ogled Plaintiff in a lewd manner, derided and mocked her, and falsely stated additional qualifications were needed to advance professionally.  This was all done in an intimidating fashion by a man who wielded power over Plaintiff.  All of these actions relate back to sex and Ms. LiVolsi being a woman, sexual harassment, and creation of a hostile work environment. The events are completely different when considered together and in context, which is how they were pled by Plaintiff in the FAC.  The cynical attempt by Defendant to cherry pick a few phrases to argue that Plaintiff is somehow exaggerating or making up her abuse by Dean Turci-Escobar is particularly inappropriate given the standards that apply to a motion to dismiss.

As explained in the FAC, the harassment and discrimination continued and escalated. In the summer of 2022, Ms. LiVolsi underwent a major surgery and began working remotely. She returned to campus a couple of months later and encountered Dean Turci-Escobar alone in the office suite. Dean Turci-Escobar inquired about her surgery, which reproductive organs were worked on, and discussed his recent weight loss. Next, he said: "I got a pull up bar on my door. You should come hang on it sometime." Ms. LiVolsi replied: "Umm…what? I don't do pullups." He responded: "You don't have to. Just let your body hang there. It's great for your body and it feels good!" ECF No. 10 at ¶¶ 18-20. Ms. LiVolsi tried to ignore him and avoid the conversation, but Dean Turci-Escobar persisted. Taking into context Dean Turci-Escobar's close proximity to Plaintiff and his physical intimidation, this discussion of Plaintiff's reproductive organs and weight loss was blatantly sexual, unwelcome, and severely distressing. It was clear in context the comments and behavior were directed toward Plaintiff because she is a woman, and men were not subjected to the same comments and behavior. Any reasonable person would reach the same conclusion in context, particularly given the ongoing nature of Dean Turci-Escobar's severe and pervasive sexual harassment.

These behaviors did not occur as isolated one-off incidents and should not be evaluated without the context of Dean Turci-Escobar's physically intimidating presence and close proximity to Plaintiff, the body language he exhibited while making certain comments, his supervisory position, the cumulative effect of numerous sexually charged comments, and the very nature of harassment and abuse – demeaning, disrespectful treatment meant to humiliate and intimidate its victims into not speaking out and defending themselves. Some comments were ambiguous in isolation, but the sex-based discrimination became clear when viewed in cumulative combination, as Ms. LiVolsi would have perceived them. Dean Turci-Escobar conveyed many of these discriminatory and harassing actions knowing they would cause Plaintiff feelings of panic and create an unreasonably negative impact on Plaintiff's work performance and career progression.

**2.  Dean Turci-Escobar's Behavior Was Related to Plaintiff's Status as a Woman**

Given the context in which the comments were made and that the comments were made to Ms.LiVolsi or other females only, there was no doubt Dean Turci-Escobar was harassing and discriminating against Plaintiff based on the fact she is a woman.  Upon information and belief, Plaintiff has alleged that other former UT Austin female employees experienced these same behaviors from Dean Turci-Escobar, specifically being hit on with bizarre comments, behaviors featuring sexual innuendos, and disrespectful discriminatory commentary.  The few comments recounted by Plaintiff in her FAC show Dean Turci-Escobar engaged in a pattern of gender bias and sexual harassment during the course and scope of Plaintiff's employment. The cumulative effect created an extremely negative work environment subjecting women to disadvantageous conditions.

Throughout the FAC, Plaintiff provided numerous illustrations of how Dean Turci-Escobar's action were based on sex.  These actions should be viewed as a whole, particularly since Defendant failed to address any of Plaintiff's new allegations in the FAC.  One paragraphs of the FAC directly addresses this issue with particular clarity:

> 13.     In the context where the comments were made, there was no doubt whatsoever that Dean Turci-Escobar was harassing and discriminating against Plaintiff based on sex. Specifically, because she is a woman. Among other reasons, men were not subjected to the same abusive discrimination, harassment, and retaliation based on sex that Plaintiff suffered.  Again, Dean Turci-Escobar is highly educated and has been elevated to a position of significant authority.  He appears generally mindful of the fact that his conduct is improper and illegal, and he made at least some attempts to mask what he was doing.  However, these actions by Dean Turci-Escobar only served to make the discrimination based on sex more pronounced and more traumatizing.  Not only was he blatantly discriminating and harassing based on sex, but he was also doing so in a way which conveyed the message that he was too smart and powerful to be held accountable.  These features of Dean Turci-Escobar's sex discrimination and harassment increased the feelings of helplessness and humiliation by Plaintiff.  It appeared as if Dean Turci-Escobar was setting up his excuses and counters in advance, with smug self-assurance that UT would blindly leap to his defense if he took minimal efforts to mask his discrimination and harassment based on sex.

FAC, ECF No. 10 at ¶13.

It is also important to note Plaintiff did not merely "think" or allege without any basis that she was suffering discrimination based on sex. She thoughtfully made this decision upon review of all information, and she sought the advice of others. Paragraph 17 of the FAC explains she sought medical help and counseling specifically for this issue. ECF No. 10 at ¶17. Plaintiff's actions are consistent with her pleadings and the reality of the abuse she suffered. Like all of the other specific examples provided by Plaintiff, Defendant had no response at all. It again appears that Defendant simply recycled its motion rather than addressing the new details and allegations raised by the FAC.

### 3. Plaintiff's Employment Status was Adversely Affected.

Even though Dean Turci-Escobar's actions did not directly result in termination or a formal demotion, this does not mean that they did not adversely affect Ms. LiVolsi's employment and career. Title VII forbids an employer from taking an adverse employment action against an employee because of her sex. *See* 42 U.S.C. § 2000e-2(a); *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (noting that "adverse employment action" is "a judicially coined term referring to an employment decision that affects the terms and conditions of employment"). A plaintiff can establish a sex-discrimination claim by either direct or circumstantial evidence. *Wallace,* 57 F.4th at 217; *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015). Though a "demotion" is considered an "ultimate" employment action under Title VII, "a change in or loss of job responsibilities" may still amount to "the equivalent of a demotion" if it is "so significant and material that it rises to the level of an adverse employment action." *Wallace,* 57 F.4th at 217; *Thompson*, 764 F.3d at 504. To be "equivalent to a demotion," the action need not "result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Wallace,* 57 F.4th at 217; *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007). Several recent

5th Circuit cases provide examples of employment actions constituting "effective demotions." *Wallace,* 57 F.4th at 217 (female employee prevented from working at elevation); *Thompson*, 764 F.3d at 505 (detective job description restricted such that he was no longer a detective, but functioned as an assistant to other detectives); and *Alvarado*, 492 F.3d at 614-615 (denying a woman a transfer from state trooper to Texas Ranger was effectively a demotion).

Here, Plaintiff was forced to take on additional job responsibilities below her pay grade and discouraged from applying for and effectively denied the opportunity to apply for a promotion. She was effectively denied the ability to apply for a promotion for which she was qualified due to the culture of discrimination and harassment created by Dean Turci-Escobar, and by the misleading information that was provided in an attempt to control Plaintiff and keep her in a lower position.

Defendant's actions in late 2022 provide support for the fact that an adverse employment action did occur. One of her supervisors, Dean Rivera-Servera, who managed Dean Turci-Escobar and who was overseeing the interview process for Mr. Montes' soon-to-be vacant position, received a copy of Ms. LiVolsi's unredacted complaint reporting Dean Turci-Escobar's discriminatory actions. Ms. LiVolsi wanted to apply for the open position, a promotion, but she was afraid of continued retaliation and backlash. Plaintiff did reach out to Dean Rivera-Servera regarding the position but did not hear back, confirming her belief she would not be considered due to her reports of discrimination. ECF No. 10 at ¶23. In another instance, when Ms. LiVolsi asked Mr. Crook if she should apply for Mr. Montes' former role that was still open, Mr. Crook said that she was qualified but added it would be a "treacherous" process. In context, this clearly referred to the toxic culture of sex discrimination and sexual harassment Plaintiff had reported. ECF No. 10 at ¶27. As a third example, it was her understanding Mr. Montes personally recommended Ms. LiVolsi to replace him as Director of Student Affairs. It is significant that Mr. Montes attempted to advance Plaintiff's career while he had full knowledge of the sex discrimination and harassment she was facing, but ultimately

he could not do so because of the sex discrimination, hostile work environment, sexual harassment, and retaliation at issue in this lawsuit. ECF No. 10 at ¶25.

Immediately after Mr. Montes' last day, Dean Turci-Escobar not only mandated that Ms. LiVolsi be "softer" with students, implying Plaintiff should conform to traditional stereotypes about women but he directed Ms. LiVolsi to take on all of the office work from another employee.  As repeatedly alleged in her FAC, these actions were all taken in a concerted effort by Dean Turci-Escobar to degrade, humiliate, and limit the advancement of Ms. LiVolsi.  It would be very misleading to assert that Plaintiff merely chose to not seek advancement. Nothing could be further from the truth.

In addition to being a tangible adverse employment action for sex discrimination, Plaintiff has also pled a valid claim based on her supervisor's conduct that was "severe or pervasive sexual harassment." *Casiano v. AT&T Corp.,* 213 F.3d 278, 283-84 (5th Cir. 2000).  The Supreme Court and other federal courts have held that in cases with equivalent allegations of harassment and discrimination, even at the summary-judgment stage, "there is enough [evidence] to possibly persuade a jury that the total amount of harassment alleged could have affected a term or condition of her employment." *Wallace,* 57 F.4th at 222.  A hostile work environment exists when a workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Id. Johnson,* 7 F.4th at 399 (quotation omitted). Harassment is "severe or pervasive enough" when (1) a reasonable person in the plaintiff's position would find it hostile or abusive, and (2) the plaintiff subjectively perceived the harassment as abusive. *Id.* at 400. The objective element is determined based on all the facts and considers factors (each independently non-dispositive) such as: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Wallace,* 57 F.4th at 222.(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23,

114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). "Frequent incidents of harassment, though not severe, can reach the level of pervasiveness required under Title VII." *Wallace*, 57 F.4th at 222; *Zuniga v. City of Dall.*, Civil Action No. 3:23-CV-2308-D, 2024 U.S. Dist. LEXIS 11528 (N.D. Tex. 2024). *Arredondo v. Schlumberger Ltd.,* 583 F.Supp.3d 783, 798 (W.D. Tex. 2022) (citing *Lauderdale*, 512 F.3d at 163. As set forth above and as clearly pled in the FAC, Defendant's actions adversely affected Plaintiff's employment status and if nothing else, created a pervasive environment of harassment making the workplace unbearable to Plaintiff leading to her constructive discharge.

**4. Defendant Did Not Take Appropriate Remedial Action to Address Plaintiff's Claims.**

In some situations, "[t]he *Ellerth/Faragher* affirmative defense is an exception and is available to employers where a plaintiff alleges sexual harassment by a supervisor but does not claim that the harassment resulted in a tangible employment action." *Id*. Plaintiff has alleged an adverse employment action and has appropriately pled a cause of action on this issue, thus Defendant's arguments regarding this exception should be ignored. Further, given that Plaintiff has alleged a plausible claim on this particular element, any arguments Defendant has would go to the weight and sufficiency of the evidence, not the appropriateness of the allegations.

Should it be determined that there was no adverse employment action, Defendant still did not act appropriately, as alleged in the FAC. UT is responsible for Dean Turci-Escobar's actions. "(N)ormally an employer is strictly liable for a supervisor's harassment of an individual whom he or she supervises." *Pullen v. Caddo Par. Sch. Bd.*, 830 F.3d 205, 209 (5th Cir. 2016) (citing *Vance v. Ball State Univ.*, 570 U.S. 421 (2013)). Defendant argues there is an exception to its liability allowing an employer to claim immunity from vicarious liability for a supervisor's sexual harassment if it establishes "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to

avoid harm otherwise." *Boh Bros*., 731 F.3d at 462, (quoting *Watts v. Kroger Co.,* 170 F.3d 505, 509–10 (5th Cir.1999)).   The exception here does not apply.   Not only was there an adverse employment action, but Defendant created a "hostile work environment" whereby Dean Turci-Escobar's unwelcome sexual advances become so severe they interfered with the victim's work performance or created a hostile or intimidating work environment, Defendant did not use care to prevent or correct this behavior, and Plaintiff attempted to avoid the harm. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

UT had a duty to perform an investigation and take prompt remedial steps and did not. Ms. LiVolsi used proper channels to report Dean Turci-Escobar's actions but was ignored or not allowed to pursue her remedies.   For example, Ms. LiVolsi went to Kevin Crook, Director of Human Resources- College of Fine Arts, and reported Dean Turci-Escobar's unwelcome sexual harassment. ECF No. 10 at ¶16. In response, Ms. LiVolsi was told to contact the Title IX Office at UT Austin. When she did so, the Title IX Office informed her they only assisted with student needs or concerns. Ms. LiVolsi told Mr. Crook, but he did nothing to follow-up or conduct an investigation. Upon information and belief, despite promises otherwise, none of Dean Turci-Escobar's superiors mentioned the incidents or gave him any guidance on how or whether to alter his behaviors. *Id.*

Ms. LiVolsi contacted the Title IX Office a second time as a mandatory reporter, both for students who had negative experiences and discriminatory treatment from Dean Turci-Escobar and for herself. ECF No. 10 at ¶22. The Title IX Office advised Ms. LiVolsi to prepare written reports and to send them in as a non-formal  complaint so that it went nowhere without Ms. LiVolsi's permission. Ms. LiVolsi did not hear from the office until several weeks later when they requested an intake interview without any guarantee of confidentiality or protection from retaliation. This was shocking given the severity of impact of comments made by Dean Turci-Escobar, the volatility of the situation, and the very nature of these types of complaints.  Anonymity is vital to protect victims

from retaliation.   Being left with no choice but to protect herself from further retaliation and humiliation, Ms. LiVolsi closed the case due to fear of retaliation in the toxic work environment.

It would be extremely misleading and false to conclude Plaintiff somehow failed to take advantage of preventative or corrective measures offered by UT.  Defendant's own departments were providing conflicting information about the proper office to contact. ECF No. 10 at ¶24.  UT cannot and should not benefit from its own unclear process and incorrect advice on which Plaintiff relied. Creating a cumbersome and unhelpful process is not a defense.   When she tried to protect herself from retaliation, she was told her only choices were to be exposed to her abuser or withdraw the complaint.  The entire process was about discouraging complaints, creating confusion, and protecting the abuser.  UT's outrageous claim to have "remedied the situation" is sufficiently tone deaf and clueless that it begins to explain UT's inappropriate actions in this case and others.

Plaintiff wanted to take the proper steps, but they were not offered. and the system failed her. UT offers no facts supporting its alleged system and process beyond Plaintiff's allegations in the FAC which should be taken as true.  When she did make efforts to report, Dean Turci-Escobar was still able to retaliate against Plaintiff. Ms. LiVolsi's reports were not addressed and were ignored and blown off by those in authority. These examples clearly show UT Austin failed in its duty to "remedy the situation," and the allegations of such are more than enough to present a plausible claim.

### 5.  Plaintiff Did Experience Discrimination

In an attempt to argue dismissal of Plaintiff's discrimination claims, Defendant cites to several Fifth Circuit cases regarding the standard necessary for a discrimination claim to survive a Rule 12(b)(6) motion.  Defendant notes that to succeed at the pleading stage, a plaintiff must allege sufficient facts to show "(1) an adverse employment action, (2) taken against a plaintiff *because* of her protected status." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Olivarez v. T- mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (emphasis in original) (quoting *Cicalese v. Univ. of Tex. Med.*

*Branch*, 924 F.3d 762, 767 (5th Cir. 2019)).  Plaintiff has more than satisfied this standard.  She has alleged that she was treated differently than her male peers, that she was treated differently following her reports of harassment, and that she experienced an adverse employment action.  There are only so many ways Plaintiff can allege this to make it clear.  Plaintiff is not required to do more at the pleading stage.  Any other analysis is, again, only appropriate following further discovery.

### 6.  Plaintiff Did Experience Retaliation

To establish a retaliation claim, the employee must show that: (1) she "participated in an activity protected by Title VII;" (2) her "employer took an adverse employment action against" her; and (3) "a causal connection exists between the protected activity and the adverse employment action." *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021) (quotation omitted). An employee engages in protected activity when she opposes an employment practice that she "reasonably believes" violated Title VII. *Badgerow v. REJ Props., Inc*., 974 F.3d 610, 619 (5th Cir. 2020). Complaining to supervisors about not being afforded opportunities based on gender is protected activity. *Brown v. United Parcel Serv., Inc*., 406 F. App'x 837, 840 (5th Cir. 2010) ("Magic words are not required" as long as the employee "alert[s] an employer to the employee's reasonable belief that unlawful discrimination is at issue."). It once again appears that Defendant chose to not read or consider the specific allegations in the FAC regarding Plaintiff's allegations of protected actions and adverse employment effects.  For example, in several paragraphs throughout the FAC, Plaintiff goes into very granular detail regarding the ways that Defendant retaliated against Plaintiff when she reported her experiences of harassment and discrimination and asserted her rights. See e.g. ECF No. 10 at ¶16, 21-24, and 25-29. These paragraphs alone meet the applicable standard for retaliation, and the fact that Defendant didn't even attempt to explain why Plaintiff's allegations are inadequate should tell the Court all it needs to know. This should end the inquiry into this matter.

### 7.  Plaintiff's Constructive Discharge Claim was Appropriately Pled

Again, in its own Motion, Defendant cites to standards in an attempt to argue for dismissal when in fact, Defendant is simply proving Plaintiff's point.  Defendant states that "(A) plaintiff alleging constructive discharge must show that his or her working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 677 (5th Cir. 2021) (internal quotations omitted) (quoting *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997)).  Defendant asserts that to determine whether Plaintiff's working conditions were sufficiently intolerable to constitute a constructive discharge, a court considers whether the plaintiff suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id*. (citing *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (cleaned up)).  As Plaintiff has alleged in her FAC and reasserted numerous times in this Response, ***Plaintiff did experience several of these conditions***.  Once again, Defendant completely ignores the very precise examples provided by Plaintiff in paragraphs 30 through 32 of the FAC.  Plaintiff provided nearly ***two full pages*** in the FAC of specific examples of the exact elements set forth in the cases cited by Defendant.  Failure to even address these allegations is nearly tantamount to conceding the issue of constructive discharge.  Plaintiff did more than make conclusory statements alleging that she met the elements.  She instead provided specific examples as to how and why her experiences fit within the various categories that are considered.

In addition to the numerous examples of effective demotion discussed in the FAC, Defendant basically encouraged her to resign.  On or about the middle of December of 2022, Ms. LiVolsi went to Mr. Crook to see if anyone could directly educate Dean Turci-Escobar on how to be a more suitable leader because he was making Ms. LiVolsi's and the other female employees'

lives miserable. Mr. Crook stated they could not guarantee anything and offered no resolution.  In fact, rather than offering a plan or potential resolution for the sex-based discrimination, Mr. Crook told Ms. LiVolsi that she should probably leave the office due to the "continued implosion." ECF No. 10 at ¶27.  In retrospect, this statement was almost an invitation for Plaintiff's constructive discharge since the situation was intolerable and even those in authority made clear it would not change.  Again, despite her desire and qualifications for a better job, Plaintiff was discouraged from pursuing a promotion due to her sex and Dean Turci-Escobar's retaliation.

On the whole, despite Defendant's assertions otherwise, the atmosphere became so intolerable, Ms. LiVolsi felt compelled to take action to protect her mental health, well-being and career.   Following Dean Turci-Escobar's mocking behavior and threatening comments in approximately January of 2023, Ms. LiVolsi reached her breaking point and decided to apply for FMLA.  The sex discrimination, sexual harassment, and psychological abuse had reached the point that she could no longer safely function in the toxic environment.  From approximately February 14, 2023 through May 8, 2023, Ms. LiVolsi took her approved FMLA leave. ECF No. 10 at ¶28.

When she returned  to work, Dean  Turci-Escobar picked up right where he left off.  He ignored Ms. Livolsi on important work matters, resulting in Ms. LiVolsi having a major panic attack. Dean Turci-Escobar also sent  an email  with an extraordinarily long list of additional  tasks for her to perform, which in context was done to exacerbate and extend his longstanding pattern of discrimination and harassment.  This intimidation, insults, and ridicule had become so severe and pervasive that the work environment was utterly abusive and intolerable.  Reporting to authorities and following alleged proper procedures only made things worse.

Looking at all of these behaviors and incidents together, as a whole, in context and not in isolation is important when determining that Plaintiff was the victim of adverse employment actions following her return from FMLA leave that made the environment so intolerable that she was

ultimately forced to leave.  Collectively, the facts and events are more than enough to show a plausible claim for harassment, discrimination, retaliation, and adverse employment actions. Given this continued pattern of behavior and treatment, Plaintiff had no other option than to provide notice of her constructive discharge as a similar person in her position would have no other option than to involuntarily resign. Plaintiff provided this notice in writing.

Plaintiff's emotional, psychological, and physical health took priority over working in such unsafe and toxic conditions. UT administration encouraged this behavior by doing nothing despite having full knowledge.  Plaintiff's career stagnated, she was essentially told she would not be able to move up, and her work suffered as her mental health deteriorated.  She humiliated and harassed by Dean Turci-Escobar and was assigned menial and/or insulting work tasks. Significantly, the very clear adverse employment actions that Plaintiff suffered were not simply part of working for a bad manager.  Instead, they were primarily directed toward Plaintiff because she is a woman, and because she asserted her rights. Men and others who did not speak up were not subjected to the same adverse employment actions and conditions. Given that an FMLA leave necessitated by the sex discrimination and harassment of Dean Turci-Escobar didn't cause any positive change, any reasonable person in Plaintiff's position would conclude that the intolerable and toxic work environment was permanent. As a result of UT's violations of law, Ms. LiVolsi has suffered actual damages in the form of lost compensation, wages, benefits and other economic damages (past and future).  Ms. LiVolsi has also suffered compensatory damages, including loss of standing in the community, damage to reputation, loss of career advancement, humiliation, degradation, emotional distress, emotional pain and suffering, loss of enjoyment of life, mental anguish and other losses.

## PRAYER

In this Response, Plaintiff has more than adequately pled claims for harassment, discrimination, retaliation, and constructive discharge.  Therefore, the Motion should be denied.

Dated: May 20, 2024

Respectfully submitted,

*s/Anne Grigg*
C. Ashley Callahan
State Bar No. 24027545
Anne E. Grigg
State Bar No. 24032252
LAW OFFICES OF C. ASHLEY CALLAHAN, P.C.
603 W. 17th Street
Austin, TX 78701
Telephone:  512.817.3977
Telecopier:  512.287.3127
acallahan@callahanlawoffices.com
anne@callahanlawoffices.com

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing was served on all counsel of record pursuant to the Federal Rules of Civil Procedure on May 20, 2024.

*s/Anne Grigg*
Anne Grigg