IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MALIA LIVOLSI, | § § | |
| Plaintiff, | § § | |
| v. | § § | 1:24-CV-127-RP |
| UNIVERSITY OF TEXAS AT AUSTIN, | § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant University of Texas at Austin's ("UT") Motion to Dismiss. (Dkt. 11). Plaintiff Malia LiVolsi ("LiVolsi") responded, (Dkt. 12), and UT replied, (Dkt. 13). Having considered the parties' submissions, the record, and the applicable law, the Court will deny UT's motion.

**I. BACKGROUND**

This is a Title VII employment discrimination and retaliation case. The following facts are based on the allegations in LiVolsi's Amended Complaint. (Dkt. 10). LiVolsi began working for UT as an Academic Advisor for the Butler School of Music in March of 2020 and was promoted to Senior Academic Advisor in August of 2021. (Am. Compl., Dkt. 10, ¶ 9.). LiVolsi alleges that beginning in late fall of 2021, she experienced sex discrimination and harassment from John Turci-Escobar ("Turci-Escobar"), the Assistant Dean for Undergraduate Studies-College of Fine Arts and one of LiVolsi's supervisors. (*Id.* at ¶¶ 1, 9).

LiVolsi alleges Turci-Escobar had a pattern of making unwelcome comments related to her sex. (*Id.* at ¶ 8). She alleges he made the following comments:

1. On a Zoom meeting with LiVolsi and other women, Turci-Escobar said, "Oh all three women are here. I'm scared!" (*Id.* at ¶ 9).

1

2. Turci-Escobar spoke to LiVolsi about how his wife made things difficult when it came to matters related to the female staff. (*Id.*).

3. Turci-Escobar approached LiVolsi in front of prospective students and parents and said, "Why so goth today?" while lewdly looking LiVolsi up and down. (*Id.* at ¶ 11).

4. Turci-Escobar also said to those same students and parents, "Malia has a fancy Lexus. She's fancy in case you didn't know." (*Id.*).

5. Turci-Escobar told LiVolsi, "You know you do pretty great work and have moved up quickly here, but if you want to keep moving up you need a Masters." (*Id.*).

6. Turci-Escobar messaged LiVolsi when she was off work, and when LiVolsi asked him to contact another employee, he responded, "But I prefer talking to you…" (*Id.* at ¶ 14).

7. Turci-Escobar approached LiVolsi while she was alone in an office suite and inquired about her recent surgery and reproductive organs. (*Id.* at ¶ 19).

8. In the same conversation, Turci-Escobar said, "I got a pull up bar on my door. You should come hang on it sometime." LiVolsi replied, "Umm…what? I don't do pullups," and Turci-Escobar responded, "You don't have to. Just let your body hang there. It's great for your body and it feels good!" (*Id.* at ¶ 20).

LiVolsi further alleges these comments were often made in close physical proximity, and that the context and tone were critical features. (*Id.* at ¶¶ 10, 12).

LiVolsi took her concerns to Kevin Crook ("Crook"), Director of Human Resources-College of Fine Arts, and Crook directed her to UT's Title IX Office. (*Id.* at ¶ 16). LiVolsi alleges the Title IX office informed her it only assists with student concerns. (*Id.*). It was conveyed to LiVolsi that that Dr. Rivera-Servera ("Rivera-Servera"), the Dean of the College of Fine Arts, had a "stern talk" with Turci-Escobar. (*Id.*). Turci-Escobar's behavior caused LiVolsi extreme distress, to the extent she sought regular treatment from a psychiatrist. (*Id.* at ¶ 17). Because of this, Chris Montes

2

("Montes"), the Director of Student Affairs-College of Fine Arts, allowed LiVolsi to begin working from home. (*Id.* at ¶ 21).

Shortly after, two students reported complaints against a professor in the music school. (*Id.*). LiVolsi had raised similar concerns to Turci-Escobar a year earlier, and he responded, "Tough love." (*Id.*). LiVolsi contacted the Title IX office on behalf of the students and herself. (*Id.* at ¶ 22). When the Title IX office requested an intake interview but said it could not guarantee confidentiality or protection from retaliation, LiVolsi closed her case out of fear of retaliation. (*Id.*). An un-redacted closure memorandum containing her complaint was sent to Rivera-Servera. (*Id.* at ¶ 17).

In November of 2022, Montes announced he would be leaving his position by early December. (*Id.* at ¶ 25). Montes recommended LiVolsi to replace him, and LiVolsi wanted to apply for the position. (*Id.* at ¶¶ 23, 25). After Montes resigned, Turci-Escobar instructed LiVolsi to be "softer" with students and assigned her additional office work from another employee's workload. (*Id.* at ¶ 26). LiVolsi had a conversation with Crook, asking if anyone could educate Turci-Escobar on being a suitable leader, and Crook offered no resolution. (*Id.* at ¶ 27). Crook said LiVolsi should probably leave the office due to the "continued implosion." (*Id.*). He also said LiVolsi was qualified for Montes's position, but that applying would be a "treacherous" process. (*Id.*).

LiVolsi alleges Turci-Escobar mocked her and continued to be cold and demanding of her through January 2023. (*Id.* at ¶ 28). LiVolsi felt her mental health was pushed to a breaking point, and she took FMLA leave from approximately February 14, 2023, through May 8, 2023. (*Id.*). Upon her return, Turci-Escobar's behavior continued; he ignored LiVolsi about work matters and then sent her a long list of additional tasks. (*Id.* at ¶ 29). Ultimately, LiVolsi provided UT notice of her resignation. (*Id.* at ¶ 31).

Based on these allegations, LiVolsi brings claims under Title VII for discrimination, sexual harassment, and retaliation. (*Id.* at ¶¶ 34-40). UT filed a Rule 12(b)(6) motion to dismiss for failure to state a claim and asks the Court to dismiss the action in its entirety. (Dkt. 11).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the

4

complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

UT moves to dismiss on multiple grounds. UT argues (1) LiVolsi's Title VII claims are time-barred for failure to exhaust her administrative remedies; (2) LiVolsi fails to plead facts that demonstrate a hostile work environment due to sexual harassment; (3) LiVolsi fails to allege a plausible discrimination claim under Title VII; and (4) LiVolsi fails to allege a plausible retaliation claim under Title VII.

#### A. Exhaustion of Administrative Remedies

Exhaustion under Title VII occurs when an individual files a timely charge of discrimination with the EEOC, the charge is dismissed by the EEOC, and the EEOC informs the individual of the right to sue. *Hall v. Cont'l Airlines, Inc.*, 252 F. App'x. 650, 653 (5th Cir. 2007); 42 U.S.C. § 2000e-5 (e) and (f). Timely filing an EEOC charge is a precondition to filing suit in federal district court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). An EEOC charge is timely if it was filed within 180 days after the occurrence of the alleged discriminatory practice unless the complainant has instituted proceedings with a state or local agency with the authority to grant the relief sought, under which circumstance the period for filing such a charge with the EEOC is extended to 300 days. 42 U.S.C. § 2000e-5 (e)(1). But when a claim is based on a continuing pattern of harassment, rather than a discrete instance, the "continuing violation" doctrine may apply to extend the statute of limitations. *See Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). To take advantage of the continuing violation doctrine, Plaintiff must show (1) separate but related acts that (2) create a continuing violation. *Id.*

UT argues that since LiVolsi filed her charge with the EEOC on May 17, 2023, any claims that arose from actions taking place before July 21, 2022, should be dismissed, and further, that LiVolsi alleges only a series of unrelated incidents, so she cannot take advantage of the continuing violation doctrine. (Dkt. 11, at 6). It is undisputed that some of the actions giving rise to LiVolsi's claims occurred after July 21, 2022; the dispute is whether these actions are sufficiently related to the prior actions for LiVolsi to benefit from the continuing violation doctrine.

Plaintiff alleges Turci-Escobar's actions were a pattern of behavior that created a hostile work environment. (Am. Compl., Dkt. 10, ¶¶ 8, 37). Hostile work environment claims are different in kind because their very nature involves repeated conduct. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). And "provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. Here, the alleged instances of Turci-Escobar's harassment are related because together they create the hostile work environment. Since some of Turci-Escobar's actions occurred within 300 days of LiVolsi's EEOC complaint, the entire period LiVolsi alleges she was subject to the hostile work environment may be considered. And as for LiVolsi's retaliation claims, she alleges specific retaliatory acts occurred in December of 2022 through May of 2023, (Am. Compl., Dkt. 10, ¶¶ 27, 28, 29), well past the July 2022 cutoff UT argues for. So, LiVolsi's claims are not barred for lack of exhaustion.

### B. Hostile Work Environment

UT argues that LiVolsi fails to allege facts that demonstrate a hostile work environment. A prima facie case for a hostile work environment due to sexual harassment requires a plaintiff to show that (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and

6

failed to take remedial action. *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). But where a harassment claim arises out of a supervisor's conduct, only the first four elements are required. *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013). So, to survive a 12(b)(6) motion to dismiss, LiVolsi must allege facts that make the four elements of her hostile work environment claim plausible. *See Cuvillier*, 503 F.3d at 401. It is undisputed that LiVolsi, as a woman, belongs to a protected class, fulfilling the first.

In determining whether a working environment is "hostile" or "abusive", all the circumstances must be considered, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir. 1995) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). For conduct to be sufficiently severe or pervasive, it must be both objectively and subjectively offensive. *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022). Here, LiVolsi alleges at least eight instances of unwelcome comments, (Am. Compl. at ¶¶ 9−20), making it plausible that Turci-Escobar's behavior was frequent enough to rise to the required level of severity. Additionally, she alleges these comments were often made in a physically intimidating manner. (*Id.* at ¶ 12). Further, some of Turci-Escobar's behavior directly affected LiVolsi's work performance, such as when he ignored her communications regarding work tasks. (*Id.* at ¶ 29). Considering all the alleged circumstances, the Court finds LiVolsi has sufficiently pled facts that plausibly rise to the level of objectively offensive and hostile conduct.

UT also argues that Turci-Escobar's conduct is not based on LiVolsi's sex. (Dkt. 11, at 8). For incidents of harassment to be relevant, a fact finder must be able to reasonably conclude the conduct is based on animus for the plaintiff's protected class. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 564 (5th Cir. 2012). However, a fact finder may conclude incidents that are less clearly

related to the plaintiff's protected class are indeed related in the context of other incidents more closely connected to the protected characteristic. *See id.* Here, LiVolsi alleges Turci-Escobar inquired about her reproductive organs and spoke to her about how his wife made things "difficult" when it came to female staff, (Am. Comp. at ¶¶ 9, 19), both of which are closely related to her sex. Further, a reasonable fact finder could conclude his other body-related comments, such as the interaction about hanging on his pull-up bar, (*id.* at ¶ 20), are similarly connected to her sex. While some of Turci-Escobar's alleged conduct is less clearly related to LiVolsi's sex, a reasonable fact finder could conclude in the context of the sex-related comments that his conduct is based on animus for LiVolsi's sex. Especially in light of LiVolsi's allegations that context and tone were key features of Turci-Escobar's comments, (*id.* at 10), the Court finds it plausible that Turci-Escobar's conduct was related to LiVolsi's sex. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 82 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.").

Lastly, UT argues LiVolsi fails to demonstrate that Turci-Escobar's alleged harassment affected a term, condition, or privilege of her employment. (Dkt. 11, at 10). The Fifth Circuit concluded in *Hamilton v. Dallas County* that alleging that favorable shifts were being assigned on the basis of sex was sufficient at the motion to dismiss stage to demonstrate harassment affected a term, condition, or privilege of employment. 79 F.4th 494, 505-06 (5th Cir. 2023). Similarly, here, LiVolsi alleges Turci-Escobar assigned her the additional workload of another employee, (Am. Compl. ¶ 26), and  sent her an extraordinarily long list of additional tasks to perform. (*Id.* at ¶ 29). The Court finds these facts sufficient at the motion to dismiss stage to demonstrate a term, condition, or privilege of

LiVolsi's employment was affected.[1] In conclusion, the Court finds LiVolsi has plausibly pled her hostile work environment claim.

### C. Discrimination

Next, UT argues LiVolsi fails to plead a plausible and discrete discrimination claim. To succeed at the pleading stage, a plaintiff must allege sufficient facts to show (1) an adverse employment action that was (2) taken against a plaintiff because of her protected status. *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 509-600 (5th Cir. 2021). LiVolsi pleads that the harassment she experienced amounts to a constructive discharge. (*Id.* at ¶ 17). To determine whether a plaintiff's working conditions were sufficiently intolerable to constitute a constructive discharge, a court considers whether the plaintiff suffered: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 677 (5th Cir. 2021).

Here, as stated above, LiVolsi alleges Turci-Escobar assigned her the additional workload of another employee, (Am. Compl. ¶ 26), and sent her an extraordinarily long list of additional tasks to perform, (*id.* at ¶ 29), both of which could plausibly be considered reassignment to menial or degrading work. Further, Montes told her "… she should probably leave the office due to the

---

[1] Because the Court finds LiVolsi has plausibly pled a term, condition, or privilege of her employment was affected, the Court does not reach a conclusion on UT's argument that it is entitled to the *Ellerth/Faragher* defense. *See Pullen v. Caddo Par. Sch. Bd.*, 830 F.3d 205, 209 (5th Cir. 2016) (explaining that the *Ellerth/Faragher* defense is available to employers where a plaintiff alleges sexual harassment by a supervisor but does not claim that the harassment resulted in a tangible employment action); *see also E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 462 (5th Cir. 2013) ("under [the *Ellerth/Faragher* defense], as an employer is not vicariously liable for harassment by a supervisor if it can show (a) the employer exercised reasonable care to prevent and correct promptly and sexually harassing behavior and (b) the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.").

'continued implosion,'" (*id.* at ¶ 27), which plausibly encourages her resignation. Additionally, LiVolsi alleges these actions were only directed toward her and not her male peers. (*Id.* at ¶ 26). The Court finds LiVolsi's comparator allegations sufficient at this stage to make it plausible these actions were taken because of LiVolsi's sex. *See Olivarez* 997 F.3d at 600 (granting motion to dismiss in part because complaint lacked any comparator allegations). Therefore, the Court finds LiVolsi sufficiently pleads a discrimination claim.

### D.  Retaliation

Lastly, UT argues LiVolsi fails to allege a plausible retaliation claim under Title VII. (Dkt. 11, at 19). To establish a retaliation claim at the pleading stage, a plaintiff must allege (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020). Specifically, UT argues the incidents of which LiVolsi complains do not constitute adverse employment actions. (Dkt. 11, at 19). But, as explained above, the Court finds LiVolsi sufficiently pleads constructive discharge, which constitutes an adverse employment action. *See Newbury*, 991 F.3d at 678. Therefore, the Court finds LiVolsi's retaliation claim should not be dismissed on that basis.

### IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant University of Texas at Austin's Motion to Dismiss, (Dkt. 11), is **DENIED.**

**SIGNED** on November 15, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE